UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVIS TOTTEN,

               Plaintiff,                CIVIL ACTION NO. 11-12485

        v.                           DISTRICT JUDGE SEAN F. COX

CARRON CALDWELL,             MAGISTRATE JUDGE MARK A. RANDON
RAYMOND D. BOOKER,
TINA POPE, AND MARVA MYLES,

               Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 17)

I.    **INTRODUCTION**

      Plaintiff, a Muslim prisoner, brought this civil rights claim under 42 U.S.C. § 1983

against Defendants Carron Caldwell, Raymond D. Booker, Tina Pope, and Marva Myles

(collectively, "Defendants")[1] alleging religious discrimination.  (Dkt. No. 1).  Defendants are

employees at the Ryan Correctional Facility ("RRF").  Defendant Caldwell is the Chaplin,

Defendant Booker is the Warden, Defendant Pope is the Food Service Assistant Director, and

Defendant Myles is the Grievance Coordinator.  Defendants are sued in their individual

capacities.

_____

[1] Plaintiff's Complaint names Samuel Surles as a co-Plaintiff and is alleged to be filed on behalf of other similarly situated Muslims; however, Surles did not sign the complaint, this Court has not certified the case as a class action, and "*[p]ro se* prisoners generally may not bring class action lawsuits concerning prison conditions."  *Dodson v. Wilkinson*, 304 Fed. Appx. 434, 438 (6th Cir. 2008) (citations omitted).

Before the Court is Defendants' Motion for Summary Judgment.  (Dkt. No. 17).

Defendants claim they are entitled to qualified immunity.  Plaintiff responded on December 21,

2011.  (Dkt. No. 18).  Defendants did not file a reply.

For the following reasons, this Magistrate Judge **RECOMMENDS** that Defendants'

motion be **GRANTED IN PART AND DENIED IN PART**.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material only if it might affect the outcome of the case under the governing law.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  On a motion for summary

judgment, the Court must view the evidence, and any reasonable inferences drawn from the

evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241

F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to

support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If

the moving party carries this burden, the party opposing the motion "must come forward with

specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587.  The

Court must determine whether the evidence presents a sufficient factual disagreement to require

submission of the challenged claims to a jury or whether the evidence is so one-sided that the

moving party must prevail as a matter of law.  *See Anderson*, 477 U.S. at 252 ("[t]he mere

-2-

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff").

## III.    QUALIFIED IMMUNITY

Defendants' motion for summary judgment seeks entry of judgment in their favor solely

on qualified immunity grounds.  "When a defendant raises the defense of qualified immunity, the

plaintiff bears the burden of demonstrating that the plaintiff is not entitled to qualified

immunity."  *Salaam v. McKee*, 2008 WL 363598 at *9 (6th Cir. Feb. 11, 2008) (citing *Haynes v.

City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007); *Baker v. City of Hamilton*, 471 F.3d 601,

605 (6th Cir. 2006); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

"In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that 'government

officials performing discretionary functions, generally are shielded from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  *McKee*, 2008 WL 363598 at *9.

A two-part test is used to determine whether qualified immunity applies: "(1) whether,

considering the allegations in a light most favorable to the party injured, a constitutional right has

been violated, and (2) whether that right was clearly established."  *Estate of Carter v. City of

Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).  For a right to be "clearly established," the "contours

of the right must be sufficiently clear that a reasonable [government official] would understand

that what he is doing violates that right."  *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th

Cir. 2009); *see also Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) ("[f]or a

constitutional right to be clearly established, as this court has repeatedly noted, 'the law must be

clear in regard to the official's particular actions in the particular situation'") (citations omitted).

-3-

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).  "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*."  *Saylor*, 118 F.3d at 515 (emphasis in original) (citation omitted).

The Court is "free to consider [the two-part test] in whatever order is appropriate in light of the issues before [it]," and therefore need not decide whether there was a constitutional violation if the Court determines that an official in Defendants' position would reasonably believe that their actions were not in contravention of Plaintiff's constitutional rights.  *See Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citation omitted).

"At the summary judgment stage, a plaintiff may not rely on his pleadings.  Rather, the issue is whether 'the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights.'" *McKee*, 2008 WL 363598 at *9.

## IV.    ANALYSIS

### A.    Carron Caldwell

Plaintiff alleges Defendant Caldwell (the Chaplin):  (1) threatened Plaintiff with disciplinary action if he attended the Al-Jumu'ah prayer service, the Ta'Leem study class or any Islamic seminar while on a work or school assignment; (2) tried to control how Muslims appoint their spiritual leaders for the Al-Jumu'ah prayer services, the Ta'Leem study classes, and the Islamic seminars; (3) refused to prepare for the Id-ul-Fitr feast on September 10, 2010; (4)

-4-

refused to prepare for the Eid-al-Adha prayer service on November 16, 2010; (5) cancelled the

Ta'Leem study class on November 20, 2010; (6) refused to allow Muslim volunteers to bring

dates into RRF to eat during Ramadan (August 11, 2010 to September 12, 2010); (7) expressed

anti-Muslim/Islamic sentiments toward Plaintiff from 2009-2011; (8) intentionally lost religious

documents needed for the Ta'Leem study classes and the Al-Jumu'ah prayer services; (9)

cancelled the March 19, 2011 Islamic educational seminar; (10) intentionally created

disturbances during prayer service in January, February, March, and April 2011 by dragging

tables and chairs across the floor; and (11) failed to respond to grievances dated September 10,

2010, September 14, 2010, and November 19, 2010.

<div style="margin-left:2em">

**1.**    **Threatening Plaintiff with Disciplinary Action if he Attended the Al-Jumu'ah Prayer Service, the Ta'Leem Study Class or any Islamic Seminar While on a Work or School Assignment**

</div>

Plaintiff alleges Defendant Caldwell violated MDOC Policy Directive 05.03.150 and his

First Amendment rights by threatening him with disciplinary action if he was caught attending

the Al-Jumu'ah prayer service, the Ta'Leem study class, or any Islamic seminar while on a work

or school assignment.

The First Amendment provides that "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof[.]"  U.S. Const. amend I.

"Prisoners retain the First Amendment right to the free exercise of their religion."  *Hayes v.

Tennessee*, 424 Fed.Appx. 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929

(6th Cir. 1985)).  However, Defendant Caldwell has raised the defense of qualified immunity.

This Magistrate Judge finds Defendant Caldwell is entitled to qualified immunity on this

issue.  Plaintiff has not met his burden of convincing the Court that it is clearly established law

that an official's failure to allow prisoners to attend the Al-Jumu'ah prayer service, the Ta'Leem study class, or any Islamic seminar violates their First Amendment right to practice their religion. *See Key*, 179 F.3d at 1000; *see also Snyder v. Trudell*, 2009 WL 37183 at *9 (E.D. Mich. Jan. 6, 2009) ("[I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself") (quoting *ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988)).

Defendant Caldwell followed MDOC Policy Directive 05.03.150(BB) which says, "[p]risoners shall not be released from work or school assignments to attend group religious services or activities, consistent with restrictions on attending other personal interest activities." In 1987, the Supreme Court held that prohibiting inmates from attending religious services while on work assignments has a logical connection to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350-51 (1987).

In the absence of an established constitutional right, Defendant Caldwell is entitled to qualified immunity on this issue.

> **2.    Controlling how Muslims Appoint their Spiritual Leaders for the Al-Jumu'ah Prayer Services, the Ta'Leem Study Classes, and the Islamic Seminars**

Plaintiff alleges Defendant Caldwell violated MDOC Policy Directive 05.03.150 and his First Amendment rights by attempting to control how Muslims should appoint their spiritual leaders for the Al-Jumu'ah prayer services, the Ta'Leem study classes, and the Islamic seminars.

However, Plaintiff neither indicates whether Defendant Caldwell actually appointed an inadequate spiritual leader nor does Plaintiff indicate how Defendant Caldwell's attempt to take control interfered with his right to practice his religion. Plaintiff simply makes conclusory

-6-

assertions, which are "not sufficient to show a genuine issue of fact necessary for the denial of summary judgment." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 343 (6th Cir. 1993).

Defendant Caldwell is thus entitled to summary judgment on this issue.

### 3.   Failure to Make Preparations for the Id-ul-Fitr Feast on September 10, 2010

Plaintiff alleges Defendant Caldwell violated his First Amendment rights and MDOC Policy Directive 05.03.150 when she did not make the necessary preparations for the Id-ul-Fitr feast that was supposed to happen on September 10, 2010. While Plaintiff alleges inmate Eric Tamlin submitted a proposal for the Id-ul-Fitr feast to Defendant Caldwell on June 28, 2010, this proposal was not presented to the Court.

Defendant Caldwell indicated in her Affidavit:

> 5.      On September 10, 2010, Plaintiff Totten contacted me by letter that indicated he and other Muslim prisoners were being discriminated against. The Plaintiff also filed a grievance regarding the matter, falsely indicating that he and other prisoners were not able to have a successful Ramadan Fast and Id al-Fitr[sic] at the end of Ramadan. I provided Assistant Food Service Director Tina Pope with a list of all Ramadan participants so the participants would be allowed to observe their religious fast. They were provided with alternative meal service. Also, administrators at RRF approved an Eid Al Fitr[sic] program that was conducted on September 10, 2010.

(Dkt. No. 17; Ex. 1, Affidavit of Carron Caldwell with Attachments).

Defendant Caldwell sent Deputy Warden Nobles a memorandum dated September 5, 2010 that says:

> [t]he Chaplain's department is proposing to have the end of Ramadan Feast (Eid al Fitr[sic]) on Friday, September 10, 2010 in building 300, gym from 0830-1000 hrs. There will be three volunteers in attendance.

It has been past practice for the facility to provide trail mix to this event as well as
allow prisoners to bring their own additional food.

(Dkt. No. 17; Ex. 1).  This memorandum was received in the Warden's Office on September 13,

2010 – three days after the Id-ul-Fitr feast was supposed to happen.

On September 5, 2010, Defendant Caldwell sent another memorandum to the ADW of

Programs, the Deputy Warden, and the Warden asking them to approve the Id-ul-Fitr feast.  (Dkt.

No. 17; Ex. 1).  The Deputy Warden approved the feast on September 7, 2010, but the Warden

did not approve the feast until September 14, 2010 – four days after the Id-ul-Fitr feast was

supposed to happen.  The ADW of Programs did not approve the feast.

While the Court is unsure whether the Id-ul-Fitr feast actually occurred on September 10,

2010, Defendant Caldwell took the required steps for the feast to occur.  As Defendant Caldwell

indicates in her Affidavit, "[a]ll special religious activities must be approved by administrative

staff, including the Assistant Deputy Warden of Programs, the Deputy Warden, and the Warden."

(Dkt. No. 17; Ex. 1 at ¶9).

Defendant Caldwell is thus entitled to summary judgment on this issue.

> **4.    Failure to Make Preparations for the Eid-al-Adha Prayer Service on
> November 16, 2010**

Plaintiff alleges Defendant Caldwell violated his First Amendment rights when she failed

to make the necessary preparations for the Eid-al-Adha[2] prayer service that was supposed to

occur on November 16, 2010.

---

[2] Eid-al-Adha is a religious festival celebrated by Muslims worldwide as a commemoration of Ibrahim's
(Abraham's) willingness to sacrifice his son Ismael, for Allah.  *Grate v. Huffman*, 2007 WL 3275151 at *4 (W.D.
Va. Nov. 5, 2007) (citations omitted).

In support of his argument, Plaintiff submitted a proposal from inmate Eric Tamlin to

Defendant Caldwell dated September 18, 2010.  The proposal says:

> In keeping with our 2010 Calendar of Events, we have put together this
> comprehensive Religious observance of Zul-Hajj or Eid al-Adha, which is the
> second <u>major</u> Holy Day of celebration (Day of Sacrifice), for Muslims that
> commemorate of the whole ceremony of Hajj of Hadrat Ibrahim (Abraham) and
> his family's acts of devotion to God Almighty.  This Hajj or annual pilgrimage to
> Makka (Mecca) event occurs two months and ten days after Ramadan ends.  Over
> two million Muslims perform the pilgrimage annually, and the rest of the over one
> billion Muslims world-wide celebrate the Eid holiday (Festival of Sacrifice) with
> the Hajj on the 10th of Dhul-Hijjah, Muslim[s] around the world wear their nicest
> clothing and attend a special prayer gathering in the <u>morning</u>.  This is followed by
> a short sermon, etc.  The traditional Eid greeting is "Eid Mubarak, which means
> 'Holiday Blessings,'" Muslims are required to visit each others[sic] homes and
> partake in festive meals with special dishes, beverage, and desserts.  Children
> receive gifts and sweets.  The meat offer [of] domestic animals, as a symbol of
> Ibrahim (Abraham's) sacrifice, is distributed for consumption for family, friends,
> and to the poor and needy.  Hajj is the Fifth Pillar upon which Islam stands, and
> God made it compulsory upon every able Muslim male and female to perform it . .
> . The Hajj washes away all <u>sins</u>. [3:97]
>
> .    .    .
>
> Because we (Muslims) are not able to perform the actual sacrifice of the
> animal(s), in keeping with the <u>tenets</u> of Al-Islam, the Muslim volunteers should be
> allowed to donate the cooked sacrificed meats to us (Muslims) for the feast on one
> of the above mention three days.  Eid al-Adha or the Festival of Sacrifice is an
> essential part of Muslims faith, beliefs and practices made mandatory by Allaah
> (God) on all able Muslims.
>
> .    .    .
>
> **NOTE**:       This proposal for Eid al-Adha Day of celebration is not a burden
> on the goals, objectives and penological interest of MDOC or its
> facilities in the performance of its daily duties and functions.

(Dkt. No. 18, Plaintiff's Rebuttal of Defendants' Motion for Summary Judgment).

This Magistrate Judge finds Plaintiff has presented evidence to demonstrate that

Defendant Caldwell infringed on his ability to attend the Eid-al-Adha prayer service, which is

mandated by his religion and is a "sincerely held" practice.  In response, Defendant Caldwell has

not presented any evidence to demonstrate a legitimate penological interest for not having the

prayer service nor has she indicated what she did (if anything) to arrange for the prayer service.

Accordingly, summary judgment should not be granted on this issue.

With regard to qualified immunity, this Magistrate Judge finds there is a genuine issue of

material fact on the question of whether Plaintiff's First Amendment constitutional rights were

violated by Defendant's Caldwell's failure to schedule the Eid-al-Adha prayer service.  And,

having apparently received Tamlin's letter, it cannot be said that a reasonable official in

Defendant Caldwell's position would not have recognized Plaintiff's First Amendment rights.

Defendant Caldwell is thus not entitled to summary judgment on qualified immunity

grounds on this claim.

> **5.    Defendant Caldwell:  (a) Refused to Allow Muslim Volunteers to
>          Bring Dates into the Ryan Correctional Facility to Eat During
>          Ramadan; and (b) Intentionally Lost Religious Documents Needed for
>          the Ta'Leem Study Classes and the Al-Jumu'ah Services**

Plaintiff alleges Defendant Caldwell violated his First Amendment rights when she:  (1)

refused to allow Muslim volunteers to bring dates (fruit) into the facility to eat during Ramadan;

and (2) intentionally lost several religious documents that needed to be copied for the Ta'Leem

study classes and the Al-Jumu'ah services.

This Magistrate Judge finds Defendant Caldwell is entitled to qualified immunity on

these issues.  Plaintiff did not meet his burden to show it is clearly established law that a

government official's failure to allow prisoners to eat dates during Ramadan and not having

-10-

documents for religious classes and services violates their First Amendment right to practice their religion.  *See Key*, 179 F.3d at 1000.

Further, Plaintiff simply alleged that the prisoners wanted "extra" copies of certain documents such as the Muslims' Goals and Objectives; it is implied that they had some copies of the documents Defendant Caldwell allegedly lost.  Plaintiff was allowed to attend the Ta'Leem study classes and the Al-Jumu'ah services.  (Dkt. No. 17; Ex. 1).

### 6.      Cancelling the Islamic Ta'Leem Study Class on November 20, 2010 and the March 19, 2011 Islamic Educational Seminar

Plaintiff alleges Defendant Caldwell violated his due process rights by cancelling the Ta'Leem study class on November 20, 2010 because of a Christian Gospel concert.  This Magistrate Judge construes Plaintiff's argument as though he is alleging Defendant Caldwell violated his equal protection rights by treating Muslim inmates differently than Christian inmates.

Plaintiff also alleges Defendant Caldwell violated his First Amendment rights and his right to Equal Protection by cancelling the Islamic education seminar scheduled for March 19, 2011, but helping Christian inmates with their program on March 26, 2011 for the New Saint Paul Tabernacle Church.

"To establish an equal protection violation, [Plaintiff] must show that [Defendant Caldwell] intentionally discriminated against him and that [her] behavior was motivated by purposeful discrimination."  *Abdullah v. Fard*, 1999 WL 98529 at *2 (6th Cir. Jan. 28, 1999) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977)).

-11-

Plaintiff's Complaint does not contain any allegations of purposeful discrimination (i.e., allegations that Defendant Caldwell intentionally discriminated against Plaintiff by cancelling the study class and educational seminar solely based on his Islamic religion).   Accordingly, his equal protection claim lacks merit.  Notably, Defendant Caldwell scheduled the Ta'Leem study class for every other Saturday in November 2010.  Plaintiff attended the Ta'Leem study class on November 13, 2010 and November 27, 2010.  Plaintiff was scheduled to attend the Ta'Leem study class on November 6, 2010, but he failed to do so.  (Dkt. No. 17; Ex. 1).

Defendant Caldwell is entitled to qualified immunity on Plaintiff's First Amendment claim.  Plaintiff failed to meet his burden to show it is clearly established law that a government official's isolated cancellation of an Islamic education seminar violates his First Amendment right to practice his religion.  *See Key*, 179 F.3d at 1000.

### 7.   Expression of Anti-Muslim/Islamic Sentiments Toward Plaintiff from 2009-2011

Plaintiff alleges Defendant Caldwell violated his First Amendment rights by expressing anti-Muslim/Islamic sentiments toward him between 2009-2011.  However, he only provides one example.  According to Plaintiff, on September 10, 2010, Defendant Caldwell said the Muslim volunteers for the November 5, 2010 Islamic educational seminar might instruct Muslim inmates about supporting Osama Bin Laden.

Defendant Caldwell stated in her affidavit that:

8.   The Plaintiff falsely alleges that I expressed anti-Muslim statements by suggesting that the proposal to conduct an Islamic Religious Seminar on November 5, 2010 might instruct Muslims about support of Osama Bin Laden.  I made no such statement.  Some Muslim prisoners had concerns about who should represent the Al-Islam religious group, and I asked the

-12-

> volunteer coordinator for the Al-Islam to speak to the Al-Islam group
> about their concern.

(Dkt. No. 17; Ex. 1). Because Defendant Caldwell presented evidence that she did not express anti-Muslim/Islamic sentiments toward Plaintiff, to avoid summary judgment, Plaintiff must present evidence showing there is a genuine issue for trial. Plaintiff does not meet this burden nor does he dispute Defendant Caldwell's explanation. Accordingly, Defendant Caldwell is entitled to summary judgment on this issue.

### 8. Creating Disturbances During the Prayer Service in January, February, March, and April 2011 by Dragging Tables and Chairs Across the Floor

Plaintiff next alleges Defendant Caldwell violated MCLA §750.169 when she intentionally created disturbances during prayer service in January, February, March, and April 2011 by dragging tables and chairs across the floor.

MCLA §750.169 says:

> [d]isturbance of religious meetings–[a]ny person who, on the first day of the week, or at any other time, shall willfully interrupt or disturb any assembly of people met for the worship of God, within the place of such meeting or out of it, shall be guilty of a misdemeanor.

This Court does not have the authority to initiate criminal charges against Defendant Caldwell.

Accordingly, Defendant Caldwell is entitled to summary judgment on this issue.

### 9. Failure to Respond to Grievances dated September 10, 2010, September 14, 2010, and November 19, 2010

Plaintiff alleges Defendant Caldwell had a moral and legal duty to respond to grievances, and her failure to do so constitutes animus toward Plaintiff and a violation of his First Amendment rights.

-13-

Defendant Caldwell states in her Affidavit:

1.     I am presently, and was at all times relevant to this lawsuit, employed by the Michigan Department of Corrections (MDOC), as a Chaplain at the Ryan Correctional Facility (RRF), Detroit, Michigan.  I have been employed by MDOC since September 19, 1999, and assigned at RRF since May 2009.

.     .     .

3.     As Chaplain, my primary job duty is to provide for religious services at the facility, including but not limited to scheduling prisoners to attend religious services, monitoring prisoners and religious services, maintaining contact with community religious organizations, processing volunteer applications, providing orientation to religious volunteers and providing religious counseling to prisoners.

(Dkt. No. 17; Ex. 1).  Responding to grievances was not one of Plaintiff's duties as Chaplin.

Therefore, Defendant Caldwell's failure to respond to Plaintiff's grievances did not violate his

constitutional rights.

Defendant Caldwell is entitled to summary judgment on this issue.

**B.     Raymond D. Booker**

Plaintiff alleges Defendant Booker (the Warden): (1) fraudulently approved a

recommendation to place him on a 90-day modified access to grievances; (2) refused to allow

Plaintiff to attend the Id-al-Fitr feast; use prayer oils; purchase halal food from Muslim vendors;

attend the Eid-al-Adha prayer service; pray in small groups in the housing units or on the yard;

wear Kuffi/Taroush caps in all State buildings at all times; leave work and school assignments to

attend the Al-Jumu'ah prayer service, the Ta'Leem study class or any Islamic seminar; and attend

early chow so he could attend Islamic services on time; and (3) failed to respond to Plaintiff's

request for assistance to file a grievance against Defendant Myles.

-14-

1.      **90-Day Modified Access Status**

On November 10, 2010, Defendant Booker approved a Memorandum from Defendant

Myles that says:

> Monitoring has revealed that prisoner Totten #182985 has deliberately abused the
> grievance process by filling several rejected grievances.  In accordance with
> P.D/O.P. 03.02.130 "Prisoner/Parolee Grievances", I am recommending prisoner
> Totten be placed on "Modified Access Status" for a period of ninety (90) days,
> beginning 11/12/10 ending 2/10/11.

| | | |
|---|---|---|
| RRF100900710-27Z | Rejected (non-grievable) | 09/16/10 |
| RRF100900712-27Z | Rejected (non-grievable) | 09/16/10 |
| RRF101000801-28A | Rejected (duplicative) | 10/12/10 |
| RRF101000842-28A | Rejected (duplicative) | 10/21/10 |
| RRF101100888-28J | Rejected (did not appeal to next step) | 11/09/10 |

Pursuant to MDOC Policy Directive 03.02.130(HH):

> [a] prisoner . . . who files an excessive number of grievances which are vague,
> duplicative, raise non-grievable issues, or contain prohibited language . . ., or is
> found guilty of misconduct for filing an unfounded grievance . . ., may have
> access to the grievance process limited by the Warden or FOA Area Manager for
> an initial period of not more than 90 calendar days.

Plaintiff says he cannot be placed on modified access status for filing identical grievances

as another inmate or for not appealing a grievance to the next step.  Plaintiff also says MDOC

Policy Directive 03.02.130(HH) does not indicate how many rejected grievances an inmate must

file before being placed on modified access status.

Plaintiff is correct in that the Policy Directive does not indicate how many rejected

grievances an inmate must file before being placed on modified access status, therefore, it is

within Defendant Booker's discretion.  Defendant Booker determined that "Plaintiff had filed

five grievances during approximately one and [a] half month period that were rejected because

they were identical to grievances filed by other prisoner[s], were duplicative of other grievances

-15-

filed by the Plaintiff, or were filed instead of appealing a previous grievance to the next step."

(Dkt. No. 17; Ex. 2, Affidavit of Raymond Booker with Attachments at 2).   This Magistrate

Judge finds Defendant Booker complied with MDOC Policy Directive 03.02.130(HH) when he

placed Plaintiff on modified access status.

     Defendant Booker is thus entitled to summary judgment on this issue.

### 2.    Refusal to Allow Plaintiff to Attend the Id-al-Fitr Feast

     Plaintiff alleges Defendant Booker refused to allow him to attend the Id-al-Fitr feast.

However, there are no allegations in Plaintiff's Complaint indicating what Defendant Booker did

to prohibit Plaintiff from attending the Id-al-Fitr feast.  In addition, there is a question regarding

whether the Id-al-Fitr feast actually occurred.

     More importantly, attached to Plaintiff's response is a letter from inmate Samuel Lewis

Surles to Defendant Caldwell that says:

> it is my understanding that once Warden Raymond D. Booker and/or Deputy
> Warden, Scott Nobles approved our Ramadan Fast and 'Id al-Fiftr[sic] Proposals
> of June 28, 2010, your job was to assist Muslims and simply to comply with this
> directive. [A]ffiant and other Muslims believe your anti-Muslim sentiments
> towards Muslim Islamic faith caused you to intentionally go against *Warden
> Raymond D. Booker's Orders to make Ramadan and 'Id al-Fitr a success.*

(Dkt. No. 18) (emphasis added).  Further, Defendant Booker signed Defendant Caldwell's

Memorandum dated September 5, 2010, approving the Id-al-Fitr feast (although it was approved

after the date on which the feast was supposed to occur).  (Dkt. No. 17; Ex. 1).

     Based on inmate Surles's letter, Defendant Booker approved the religious event and did

not interfere with Plaintiff's attendance at the feast (assuming it occurred).

     Defendant Booker is thus entitled to summary judgment on this issue.

-16-

### 3.     Refusal to Allow Plaintiff to Attend the Eid-al-Adha Prayer Service

Plaintiff alleges Defendant Booker refused to allow Plaintiff to attend the Eid-al-Adha

prayer service.  However, Defendant Caldwell (not Defendant Booker) was responsible for

making the necessary preparations for the prayer service.  *See* Dkt. No. 17; Ex. 1:

> 3.     As Chaplain, my primary job duty is to provide for religious services at the
> facility, including but not limited to scheduling prisoners to attend
> religious services, monitoring prisoners and religious services, maintaining
> contact with community religious organizations, processing volunteer
> applications, providing orientation to religious volunteers and providing
> religious counseling to prisoners.

Defendant Booker was merely in a supervisory role.  Plaintiff does not allege Defendant Booker

encouraged or directly participated in Defendant Caldwell's failure to make the necessary

preparations for the prayer service.  Allegations premised on respondeat superior liability are

foreclosed in § 1983 actions.  *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984):

> In *Hayes v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982), we held that the §
> 1983 liability of supervisory personnel must be based on more than the right to
> control employees.  Section 1983 liability will not be imposed solely upon the
> basis of respondeat superior.  There must be a showing that the supervisor
> encouraged the specific incident of misconduct or in some other way directly
> participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory
> official at least implicitly authorized, approved or knowingly acquiesced in the
> unconstitutional conduct of the offending subordinate.  *Hayes*, 668 F.2d at 872-
> 74.

Accordingly, Defendant Booker is entitled to summary judgment on this issue.

### 4.     Refusal to Allow Plaintiff to Purchase Halal Food from Muslim Vendors

Plaintiff alleges Defendant Booker violated MDOC Policy Directive 05.03.150 by not

allowing him to purchase halal food from Muslim vendors.  MDOC Policy Directive

05.03.150(MM) discusses what prisoners can purchase from vendors:

-17-

> Wardens shall authorize vendors from which prisoners may purchase religious reading material and other approved religious materials for each religious group recognized by the Department.  Prisoners in a CFA institution may purchase approved personal religious property other than reading material only through the institution from authorized vendors in accordance with PD 04.07.112 "Prisoner Personal Property"; religious reading material may be purchased as set forth in PD 05.03.118 "Prisoner Mail".  Religious property, including reading material, in a CFA institution is subject to the retail value limit set forth in PD 04.07.112 "Prisoner Personal Property".

MDOC Policy Directive 05.03.150(YY) says, "[s]pecial religious meals and food items shall be provided to prisoners only as set forth in this section.  This does not apply to food items that may be sold in the prisoner store pursuant to PD 04.02.130 'Prisoner Store' or provided to prisoners as religious sacraments."

MDOC Policy Directive 05.03.150 does not allow inmates to purchase food items from vendors.  Accordingly, Defendant Booker is entitled to summary judgment on this issue.

### 5.    Refusal to Allow Plaintiff to Pray in Small Groups in the Housing Unit and on the Yard

Plaintiff alleges Defendant Booker violated MDOC Policy Directive 05.03.150 by not allowing him to pray in small groups in the housing unit and on the yard.

MDOC Policy Directive 05.03.150(T) says, "[a] Warden or FOA Regional Administrator may prohibit a religious practice only if it is a threat to custody and security."  While Defendant Booker does not indicate how praying in small groups is a threat to custody and security, he has raised the defense of qualified immunity.   Accordingly, it is Plaintiff's burden to show it is clearly established law that a government official's refusal to allow him to pray in small groups in the housing unit and on the yard violates his First Amendment right to practice his religion.

-18-

*See Key*, 179 F.3d at 1000.  Because Plaintiff has not met this burden, Defendant Booker is entitled to qualified immunity on this issue.

### 6.     Refusal to Allow Plaintiff to Attend Early Chow so he Could be on time for Islamic Services

Plaintiff alleges Defendant Booker violated MDOC Policy Directive 05.03.150 by refusing to allow him to attend early chow so he can be on time for Islamic services (i.e, the Al-Jumu'ah prayer service and the Ta'Leem study classes).  *See* Dkt. No. 1; Complaint at 26:

> 22.   Plaintiff receive[d] a pass (Itinerary) each week to attend the Law Library from 12:30 to 14:00, he is allowed to go [to] "Early Chow" which is noted on this document of March 03, 2011.  However, Plaintiff is not allowed to go to early chow for the Friday (Al-Jumu'ah Prayer) service or the Saturday Ta'Leem Study Classes.  Plaintiff[sic] unit work detail do[es] not start until 3:00 p.m. from Monday to Friday, but on Saturday, it starts at 2:00 p.m. and he is not provided with an (Itinerary) to attend the Saturday Ta'leem Study Classes.

Plaintiff attended the Al-Jumu'ah prayer service on November 5, 2010; November 12, 2010; November 19, 2010; and November 26, 2010.  Plaintiff attended the Ta'Leem study class on November 13, 2010 and November 27, 2010.  There is no evidence that Plaintiff was late to the classes or the prayer services or that arriving late amounts to a violation of Policy Directive 05.03.150.  Accordingly, Defendant Booker is entitled to summary judgment on this issue.

### 7.     Refusal to allow Plaintiff to Use Prayer Oils and Wear Kuffi/Taroush Caps in All State Buildings at all Times

Plaintiff alleges Defendant Booker violated MDOC Policy Directive 05.03.150 by refusing to allow him to use prayer oils and wear kuffi/taroush caps in all State buildings at all times.

MDOC Policy Directive 05.03.150 says:

-19-

(II)    In addition to religious reading material, prisoners are allowed to possess personal religious property which are[sic] necessary to the practice of the prisoner's religion unless the item presents a threat to the custody and security of the facility, as determined by the CFA Deputy Director and subject to PD 04.07.112 "Prisoner Personal Property" and PD 05.01.142 "Special Alternative Incarceration Program".  Attachment A and B identifies personal religious property authorized by the CFA Deputy Director for prisoners who are members of a religious group recognized by the Department.  *Only religious property identified on the attachments shall be permitted.*  The attachments also identify restrictions on the possession and use of such property.

(Emphasis added).  Attachment A to MDOC Policy Directive 05.03.150 says:

The Department recognized religious groups identified on this attachment are authorized to conduct group religious services and activities unless otherwise indicated; in addition, prisoners belonging to these groups are allowed to possess religious personal property as indicted below in addition to religious reading material.

NOTE: Prisoners in Level I through V may wear an approved item which is identified by one or two asterisks <u>only</u> while attending group religious services or activities, while going directly to and from group religious services or activities, and while in their cell.

.    .    .

<u>RELIGIOUS GROUP</u>          <u>ITEM</u>

AL-ISLAM (MUSLIM)          One prayer rug (no larger than 30"x48")
                           One strand of dikr beads
              *            One kuffi cap or tarboosh for men
                           One hijab for women (no longer than 36" at longest point)
                           One star and crescent pendant no longer than 1 ½"x2", with a chain or string no longer than 24" (when worn, must be worn around the neck)

Defendant Booker was in compliance with MDOC Policy Directive 05.03.150, which does not allow Muslims to possess prayer oil.  More importantly, the Sixth Circuit has held that

-20-

religious oils may be banned in a Michigan prison. *See Munir v. Scott*, 1993 WL 465162 (6th Cir. Nov. 10, 1993) ("[d]efendant has articulated a sufficient number of legitimate security considerations concerning the use of religious oils to bring his decision within the ambit of reasonableness").

Further, MDOC Policy Directive 05.03.150 only allows Muslims to wear the kuffi cap or tarboosh while attending group religious services or activities, while going directly to and from group religious services or activities, and while in their cell – not at all times in State buildings.

Defendant Booker is thus entitled to summary judgment on these issues.

### 8.   Refusal to Allow Plaintiff to Leave Work and School Assignments to Attend the Al-Jumu'ah Prayer Service, the Ta'Leem Study Class or Any Islamic Seminar

Plaintiff alleges that Defendant Booker refused to allow him to leave work and school assignments to attend the Al-Jumu'ah Prayer Service, the Ta'Leem study class or any Islamic seminar.  However, Defendant Booker was in compliance with MDOC Policy Directive 05.03.150(BB) which says, "[p]risoners shall not be released from work or school assignments to attend group religious services or activities, consistent with restrictions on attending other personal interest activities."

Plaintiff seems to also challenge the constitutionality of MDOC Policy Directive 05.03.150.  In determining whether the prison's policy of prohibiting prisoners from attending religious services or activities while on a work or school assignment is unconstitutional, the Court must look at four factors: (1) "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.  The governmental interest must be a legitimate and a neutral one"; (2) "whether there are alternative means of exercising the right

-21-

[that] remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the absence of ready alternatives." *See Snyder*, 2009 WL 37183 at *8 (E.D. Mich. Jan. 6, 2009) (citing *Turner v. Safley*, 482 U.S. 78, 90-91 (1987)).

As to the first factor, a valid, rational connection between the regulation and the legitimate governmental interest, Defendants do not assert a legitimate governmental interest. However, the Supreme Court has held that prohibiting inmates from returning to the facility to attend Jumu'ah from outside work has a logical connection to legitimate governmental interests. *See O'Lone*, 482 U.S. at 350-51.  As such, this factor weighs in favor of the constitutionality of the regulation.

As to the second factor, there are no alternative means of attending Al-Jumu'ah prayer services, Ta'Leem study classes or Islamic seminars.  But the very stringent requirements as to the time at which the services, classes, and seminars may be held may make it difficult for prison officials to assure that every Muslim prisoner is able to attend.  *See id.* at 351.  "While we in no way minimize the central importance of Jumu'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end."  *Id.* at 351-52.  The Court must determine whether Plaintiff retains the ability to participate in other Muslim religious ceremonies.  *Id.* at 352.  The record establishes that Plaintiff was not deprived of all forms of religious exercise, but freely observed a number of religious obligations.  During Ramadan, special accommodations were made so Muslim prisoners could observe their fast, and they were given different meals whenever pork was served in the prison cafeteria.  (Dkt. No. 17; Ex. 1 at ¶5).  In addition, Plaintiff was allowed to attend the Al-Jumu'ah

-22-

prayer services, Ta'Leem Study Classes and Islamic seminars when he was not on a school or

work assignment.  (Dkt. No. 17; Ex. 1 at ¶6).  Plaintiff also was allowed to pray in his cell,

possess approved religious reading material and property, and wear a kuffi cap at certain times.

*See* MDOC Policy Directive 05.03.150.

As to the third factor, the Supreme Court has held that "special arrangements for one

group would create problems as 'other inmates [see] that a certain segment is escaping rigorous

work detail' and perceive favoritism."  *O'Lone*, 482 U.S. at 353 (citation omitted).

As to the fourth factor of a ready alternative, the Supreme Court has found that "there are

no 'obvious, easy alternatives to the policy adopted by petitioners.'"  *Id.* (citing *Turner*, 482 U.S.

at 93).

This Magistrate Judge finds that Defendant Booker is entitled to summary judgment on

the constitutionality of MDOC Policy Directive 05.03.150.

> **9.  Failure to Respond to Plaintiff's Request for Assistance to File a Grievance Against Defendant Myles**

Plaintiff alleges Defendant Booker violated MDOC Policy Directive 03.02.130(M) when

he failed to respond to his request for assistance to file a grievance against Defendant Myles.

On February 14, 2011, Administrative Assistant Frank Konieczki sent the following e-

mail to Melody A.P. Wallce, the Manager of the Policy and Rules Development Section:

> Melody,
>
> I have a quick question regarding correspondence from a prisoner who is on
> modified access.  He wants to have a staff member assigned to file a grievance
> against the Step I Grievance Coordinator.  He references Paragraph M of PD
> 03.02.130, which states "Wardens and FOA Area managers shall ensure prisoners
> and parolees are provided assistance in completing a grievance form, if needed.

> In such cases, assistance shall be provided by a staff member who is not involved in the grievance."
>
> The prisoner's correspondence and grievances indicate that he is literate. Isn't the intent of paragraph M to allow assistance to someone who may have issues that affect his ability to write a grievance, such as cognitive disability or illiteracy, the opportunity to file a grievance?
>
> Any information you can provide would be helpful. Thanks for taking the time to assist with this matter.

(Dkt. No. 17; Ex. 2). Ms. Wallace responded "Yes, exactly." (Dkt. No. 17; Ex. 2).

Based on this information and after consulting with Defendant Booker, Mr. Konieczki wrote Plaintiff a letter on February 14, 2011 that says:

> Your request to have a staff member assist you with filing a grievance has been considered. Paragraph M of the cited policy is intended to provide assistance to prisoners who are unable to file grievances without staff assistance. A review of your filed grievances and correspondence reveals that you appear to have the capability to write grievances without assistance. Accordingly, your request has been denied.

(Dkt. No. 17; Ex. 2).

Defendant Booker complied with MDOC Policy Directive 03.02.130(M), and he is entitled to summary judgment on this issue.

**C.    Tina Pope**

Plaintiff alleges Defendant Pope (the Food Service Assistant Director): (1) failed to provide Plaintiff a balanced and nutritional meal during the month of Ramadan; (2) refused to combine the afternoon and evening meal; (3) refused to substitute pork with fish, beef or chicken; and (4) threatened to remove Plaintiff from the Ramadan fast list if he was caught going through the chow line during the afternoon meal time.

-24-

###### 1.    Refusal to Serve a Balanced and Nutritional Meal During Ramadan and Substitute Pork with Fish, Beef or Chicken

Plaintiff alleges Defendant Pope failed to accommodate Plaintiff with the proper nutritional and balanced meal requirements, in violation of MDOC Policy Directives 05.03.150 and 04.07.100(I) and (J), his First Amendment rights, and the Religious Land Use and Institutionalized Person's Act ("RLUIPA"), 42 U.S.C.A. § 2000cc-1.  In section 3, RLUIPA expands the First Amendment protections accorded prisoners with respect to their religious beliefs:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1)    is in furtherance of a compelling government interest; and
>
> (2)    is the least restrictive means of furthering that compelling governmental interest.

§ 2000cc-1(a)(1)-(2).  Section 3 applies in instances where "the substantial burden is imposed in a program or activity that receives Federal financial assistance," such as a prison system.  § 200cc-1(b)(1).

Plaintiff also alleges Defendant Pope violated MDOC Policy Directive 04.07.100(I) by failing to substitute pork with fish, beef, or chicken.  According to Plaintiff, a meat entree must be substituted for another meat entree.

The Sixth Circuit has held that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions."  *Alexander v. Carrick*, 31 Fed. Appx. 176, 179 (6th Cir. 2002).  "If the prisoner's diet . . . is sufficient to sustain the prisoner in

good health, no constitutional right has been violated." *Id.* "[T]he MDOC [is not required] to provide . . . prisoner[s] with halal meat entrees. On the contrary, courts have determined that a correctional facility need only provide Muslim prisoners with food that is not haram [i.e., 'unlawful']." *Hudson v. Caruso*, 748 F.Supp.2d 721, 729 (6th Cir. 2010) (citing *Abdullah v. Fard*, 1999 WL 98529 at *1 (6th Cir. Jan. 28, 1999) (where Muslim prisoner alleged that a prohibition against non-halal meat was fundamental to his religion, the court found that he could comply with this prohibition by eating vegetarian meals and that his "First Amendment claim fails because the disputed policy did not force him to violate his religion")).

Plaintiff's Complaint does not allege that his religious dietary restrictions were violated nor does he allege that he was unable to remain in good health. In addition, "plaintiff[] cite[s] no constitutional or statutory authority to support the claim that the MDOC must provide [him] with halal meat entrees." *Hudson*, 748 F.Supp.2d at 729. Accordingly, Defendant Pope's alleged actions did not violate the constitution.

Further, Defendant Pope was required to use a Ramadan menu that coincided with the Statewide standard menu. (Dkt. No. 17; Ex. 3, Affidavit of Tina Pope with Attachments, E-Mail from Brad Purves, Food Service Manager); *see also* Dkt. No. 18, Plaintiff's Rebuttal of Defendants' Motion for Summary Judgment; Memorandum dated June 17, 2010 from Michael Martin, Special Activities Coordinator ("[p]lease use menu guidelines issued in previous years"); MDOC Policy Directive 04.07.100(J):

> The Institutional Food Service Director, SAI Food Service Supervisor, Tuscola RRTP Supervisor, or designee may elect to increase the serving size of a food item identified on the regular diet menu or include additional food items. However, as stated in Paragraph G, meals as actually served must satisfy the

-26-

nutritional and caloric recommendations set forth in the dietary reference intakes, including those regarding fat and cholesterol content.

As Assistant Food Service Director, Defendant Pope did not determine how much or what the inmates ate on a particular day.  Further, MDOC Policy Directive 04.07.100(I) says:

> The standardized regular diet menu shall be used to feed all offenders at a facility who are on a regular diet, except during emergencies, when a food item is not available, or when special food purchases are made.  Changes or substitutions to the menu for one of these reasons must be approved in advance by the institutional Food Service Director, Special Alternative Incarceration Program (SAI) Food Service Supervisor, Tuscola RRTP Supervisor, or designee, as appropriate.  *Changes or substitutions must be from the same food group as the item being replaced; however, a non-meat entree may be replaced only by another non-meant entree.*  Changes and substitutions shall be documented on the Report on Menu Change (CAH-108), which shall be submitted annually to the Food Service Section in the Operations Division, CFA.

(Emphasis added).  This Magistrate Judge reviewed the standard menu for Ramadan 2010 and noticed that there was only one pork entree listed.  For dinner on August 20, 2010, inmates had a choice of Scalloped Potatoes with Ham Casserole (a pork dish) or Scalloped Potatoes with Soy.  (Dkt. No. 17; Ex. 3, Affidavit of Tina Pope with Attachments, MDOC Weekly Menu).  There was no meat entree that needed to be substituted for another meat entree, and Plaintiff had a non-pork substitute for the ham casserole dish that was served.  "[T]here is no 'substantial burden' to [plaintiff's] religious beliefs under RLUPIA, because [he was] given alternatives to eating non-halal meat."  *Id.* at 730 (citing *Patel v. United States Bureau of Prisons*, 515 F.3d 807, 810-12 & n.8 (8th Cir. 2008) (the prison's meal plan regulations did not substantially burden a Muslim inmate's free exercise of religion where the inmate had access to only vegetarian entrees, some of which he had to pay for himself); *Watkins v. Shabazz*, 180 Fed.Appx. 773, 775 (9th Cir. 2006) (no RLUIPA violation when prisoners given alternatives to eating non-halal meat such as a

-27-

nutritionally equivalent meat substitute or finding an outside religious organization to contract

with the prison to provide halal meat)).

Defendant Pope is thus entitled to summary judgment on these issues.

### 2.      Refusal to Combine the Afternoon and Evening Meal Together

Plaintiff alleges Defendant Pope violated MDOC Policy Directive 04.07.100(G)(I) and (J)

and MDOC Policy Directive 05.03.150(PP) and (QQ) by not combining the afternoon and

evening meals together.

Brad Purves, Food Service Manager, indicated that inmates should not receive additional

food portions.  *See* Dkt. No. 17; Ex. 3, E-Mail from Brad Purves, Food Service Manager:

> There have been many questions that come up every year but one particular I
> wanted to share is this:
>
> Will Ramadan participants be served a 1.5 servings of the breakfast meal and a
> 1.5 servings of the dinner meal as they will not be eating the noon meal?
>
> Response – Ramadan is a fast that the prisoners choose to forgo[sic] eating
> between dawn and sunset – thus forgoing[sic] their lunch meal, *no facility should
> be providing extra portions*.

(Emphasis added).  Defendant Pope was required to comply with this mandate.  Accordingly, she

is entitled to summary judgment on this issue.

### 3.      Threatening to Remove Plaintiff from the Ramadan Fast List if he
###          was Caught Going Through the Chow Line During the Afternoon
###          Meal Time

Plaintiff alleges Defendant Pope violated his First and Fourteenth Amendment rights as

well as MDOC Policy Directives 05.03.150 and 04.07.100 by threatening to remove him from

the Ramadan fast list if he was caught going through the chow line during the afternoon meal

time.   According to Plaintiff, inmates cannot be charged with out of place if he eats when his

housing unit is called to chow.  This Magistrate Judge disagrees.

According to Defendant Pope:

7.      [p]risoners that participate in the fast are placed on callout to food service
before sunrise and after sundown during Ramadan.  They are not
authorized to attend the regular breakfast, lunch, or dinner lines, and they
may be issued misconducts and/or be removed for the callout if they are
observed to be at the breakfast[,] lunch, or dinner lines, as their
unauthorized presence would fit the definition of the Class II misconduct
charge of Out of Place as defined in PD 03.03.105, *Prisoner Discipline*.

(Dkt. No. 17; Ex. 3, Affidavit of Tina Pope with Attachments); *see also* Dkt. No. 17; Ex. 3, E-

Mail from Brad Purves, Food Service Manager) ("Ramadan is a fast that the prisoners choose to

forgo[sic] eating between dawn and sunset - thus forgoing[sic] their lunch meal"); Dkt. No. 18,

Plaintiff's Rebuttal of Defendants' Motion for Summary Judgment; Memorandum dated June 17,

2010 from Michael Martin, Special Activities Coordinator:

[d]uring Ramadan, Muslims who are medically/physically able to do so may fast.
Among the requirements for fasting is that they do not eat or drink between dawn
and sunset.  Prisoners who choose to fast should be accommodated as in past
years.  Both a pre-dawn meal and a post-sunset meal should be provided.

.      .      .

Ramadan participants who receive pre-dawn and post sunset sack meal bags
should not again appear in the meal line for the regularly scheduled meals.

During the month of Ramadan, Plaintiff – who elected to participate in Ramadan – was

not allowed to eat during the regular afternoon meal.  Accordingly, he would be "out of place" if

he was in the chow line during afternoon meal time, and Defendant Pope would be authorized to

discipline Plaintiff.  *See Bakr v. Johnson*, 1997 WL 428903 at *1 (July 30, 1997):

-29-

[f]or the month of Ramadan, many devout Muslims fast during daylight hours.  In an effort to accommodate this religious practice, officials of the Michigan prison system established a procedure whereby Muslims wishing to observe the period of fasting could ask the prison chaplain to place their names on a special call-out list entitling them to eat meals before sunrise and after sunset, rather than during the usual meal times.  An inmate's name would be removed from the call-out list, however, if prison personnel observed the individual in the regular food line.

Defendant Pope is thus entitled to summary judgment on this issue.

### D.     Marva Myles

Plaintiff alleges Defendant Myles (the Grievance Coordinator):  (1) recommended that Plaintiff be placed on 90-days modified access under false pretenses without providing him a due process hearing; and (2) ordered Plaintiff to her office on November 30, 2010 and told him he had no right to file grievances against anyone without her permission.

### 1.     Modified Access Status

Plaintiff alleges Defendant Myles deprived him of his right to access to the courts through her recommendation that Plaintiff be placed on 90-days modified access status.  According to Plaintiff, his grievances were not duplicative and they grieved valid issues.  Plaintiff says he was falsely accused of abusing the grievance system.

After a review of the five grievances Plaintiff filed and the responses Defendant Myles provided (Dkt. No. 17; Ex. 4, Affidavit of Marva Myles with Attachments), this Magistrate Judge finds Defendant Myles's recommendation was reasonable and warranted.

Notably, Plaintiff was not denied access to the courts or the right to file grievances on valid issues while he was on modified access status.  MDOC Policy Directive 03.02.130(KK) says:

While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator.  A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy.  The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial.  If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph G.  The Warden, FOA Area Manager, or Manager of the Grievance and Appeals Section may extend the prisoner's or parolee's modified access status for not more than an additional 30 days for each violation.  Notification of such extensions shall be consistent with the requirements set forth in Paragraphs II and JJ.

Plaintiff has failed to provide any evidence that the modified access policy was not followed.

Defendant Myles is thus entitled to summary judgment on this issue.

### 2.    Ordering Plaintiff to Defendant Myles's Office

Plaintiff alleges that Defendant Myles violated his constitutional rights when she ordered him to her office on November 30, 2010 and told him he could not file any grievances without her permission.

Even assuming Plaintiff's allegation is true, Plaintiff was on modified access status from November 12, 2010 through February 10, 2011 (which encompasses the November 30, 2010 meeting Plaintiff allegedly had with Defendant Myles).  During this time frame, Plaintiff had no right to file any grievances without approval from the Step I Grievance Coordinator.

Accordingly, Defendant Myles did not violate Plaintiff's constitutional rights by prohibiting him from filing grievances.

## V.    CONCLUSION

-31-

For the reasons stated above, this Magistrate Judge **RECOMMENDS** that Defendants' motion be **GRANTED** IN PART AND DENIED IN PART.  Plaintiff's allegation that Defendant Caldwell violated his First Amendment right by failing to schedule the Ed-al-Adha prayer service should **PROCEED**.  Plaintiffs' remaining claims against Defendants should be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon_____
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  July 31, 2012

**<u>Certificate of Service</u>**

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, July 31, 2012, by electronic and/or first class U.S. mail.*

<u>*s/Melody R. Miles*</u>
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-5540